IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| HAROLD LOUIS FITZPATRICK, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:15-CV-3202-D |
| VS. | § | |
| | § | |
| CAROLYN W. COLVIN, ACTING | § | |
| COMMISSIONER OF SOCIAL | § | |
| SECURITY, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION

Plaintiff Harold Louis Fitzpatrick ("Fitzpatrick") brings this action under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g) (the "Act"), for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for supplemental security income ("SSI") under Title XVI of the Act. For the reasons that follow, the court affirms in part and vacates and remands in part the Commissioner's decision.

I

Fitzpatrick filed an application for SSI under Title XVI of the Act on December 21, 2012, alleging a disability beginning November 19, 2012. The Commissioner denied Fitzpatrick's claim initially and on reconsideration. Following a hearing, the administrative law judge ("ALJ") found that Fitzpatrick is "not disabled." The Appeals Council denied Fitzpatrick's request for review, and the ALJ's decision became the final decision of the Commissioner.

In making her decision, the ALJ followed the five-step sequential process prescribed in 20 C.F.R. § 416.920(a). At step one, she found that Fitzpatrick has not engaged in substantial gainful activity since December 21, 2012, the application date. At step two, the ALJ found that Fitzpatrick has severe impairments of degenerative disc disease, obesity, and an affective disorder. At step three, the ALJ found that Fitzpatrick's impairments fail to meet or equal a listed impairment for presumptive disability under 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ found that Fitzpatrick has the residual functional capacity ("RFC")

> to perform light work as defined in 20 CFR 416.967(c). [Fitzpatrick] can occasionally lift 20 pounds and frequently lift 10 pounds; stand and walk 6 hours in an 8-hour day and sit for 6 hours in an 8-hour day. Pushing and pulling is unlimited except for the lifting and carrying. [Fitzpatrick] is able to understand, remember and carry out short, simple routine instructions in a simple work environment; and make judgment on simple routine work instructions. He must have only incidental public contact and only occasional contact with coworkers and supervisors, but he can respond to the usual work pressures and changes in the work setting described above as simple, routine work.

R. 70. At step four, the ALJ found that Fitzpatrick is unable to perform any past relevant work. At step five, where the burden shifted to the Commissioner, the ALJ found based on the vocational expert's ("VE's") testimony that Fitzpatrick is capable of performing jobs existing in significant numbers in the national economy, such as small product assembler, routing clerk, and small item inspector. Accordingly, the ALJ found that Fitzpatrick has not been under a disability at any time between December 21, 2012 (the application date) and June 26, 2014 (the date of the ALJ's decision).

Fitzpatrick maintains on three grounds that the Commissioner's decision must be reversed: first, the ALJ failed to properly weigh the medical evidence and failed to properly determine Fitzpatrick's RFC; second, the ALJ failed to properly evaluate Fitzpatrick's credibility; and, third, the ALJ relied on flawed VE testimony.

II

The court's review of the Commissioner's decision is limited to determining whether substantial evidence supports the decision and whether the Commissioner applied the proper legal standards to evaluate the evidence. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995) (per curiam). "The Commissioner's decision is granted great deference and will not be disturbed unless the reviewing court cannot find substantial evidence in the record to support the Commissioner's decision or finds that the Commissioner made an error of law." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (footnotes omitted).

"The court may not reweigh the evidence or try the issues de novo or substitute its judgment for that of the [Commissioner]." *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984) (citations omitted). "If the Commissioner's findings are supported by substantial evidence, then the findings are conclusive and the Commissioner's decision must be affirmed." *Martinez*, 64 F.3d at 173. "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "It is more than a mere scintilla, and less than a preponderance." *Spellman v. Shalala*, 1 F.3d

357, 360 (5th Cir. 1993) (citing *Moore v. Sullivan*, 919 F.2d 901, 904 (5th Cir. 1990) (per curiam)).  "To make a finding of 'no substantial evidence,' [the court] must conclude that there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Dellolio v. Heckler*, 705 F.2d 123, 125 (5th Cir. 1983) (citation omitted).  Even if the court should determine that the evidence preponderates in the claimant's favor, the court must still affirm the Commissioner's findings if there is substantial evidence to support these findings. *See Carry v. Heckler*, 750 F.2d 479, 482 (5th Cir. 1985).  The resolution of conflicting evidence is for the Commissioner rather than for the court.  *See Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983) (per curiam).

For purposes of social security determinations, "disability" means an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  In determining whether an applicant is disabled, the Commissioner follows a five-step sequential analysis.  *See, e.g., Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).  If the Commissioner finds that the claimant is disabled or is not disabled at any step in the analysis, the analysis is terminated.  *Id.*  Under the five-step sequential inquiry the Commissioner considers whether (1) the claimant is presently engaged in substantial gainful activity, (2) the claimant's impairment is severe, (3) the claimant's impairment meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, (4) the impairment prevents the claimant from doing past relevant work, and (5) the claimant cannot presently

- 4 -

perform relevant work that exists in significant numbers in the national economy. *See, e.g.,*

*Leggett*, 67 F.3d at 563 n.2; *Martinez*, 64 F.3d at 173-74; 20 C.F.R. § 404.1520(a)(4). "The

burden of proof is on the claimant for the first four steps, but shifts to the [Commissioner]

at step five." *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (per curiam) (citing

*Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989) (per curiam)). At step five, once

the Commissioner demonstrates that other jobs are available to a claimant, the burden of

proof shifts to the claimant to rebut this finding. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th

Cir. 1990) (per curiam).

When determining the propriety of a decision of "not disabled," this court's function

is to ascertain whether the record considered as a whole contains substantial evidence that

supports the final decision of the Commissioner, as trier of fact. The court weighs four

elements of proof to decide if there is substantial evidence of disability: (1) objective medical

facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's

subjective evidence of pain and disability; and (4) age, education, and work history.

*Martinez*, 64 F.3d at 174 (citing *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (per

curiam)). "The ALJ has a duty to develop the facts fully and fairly relating to an applicant's

claim for disability benefits." *Ripley*, 67 F.3d at 557. "If the ALJ does not satisfy [this] duty,

[the] decision is not substantially justified." *Id*. Reversal of the Commissioner's decision

is appropriate, however, "only if the applicant shows that he was prejudiced." *Id*. The court

will not overturn a procedurally imperfect administrative ruling unless the substantive rights

of a party have been prejudiced. *See Smith v. Chater*, 962 F. Supp. 980, 984 (N.D. Tex.

1997) (Fitzwater, J.).

III

Fitzpatrick maintains that the ALJ failed to properly weigh the medical evidence of his treating psychiatrist, Chandrakant Patel, M.D. ("Dr. Patel"), and failed to properly determine his RFC.

A

The ALJ found that, in addition to the listed physical impairments, Fitzpatrick has the RFC to

> understand, remember and carry out short, simple routine instructions in a simple work environment; and make judgment on simple routine work instructions. He must have only incidental public contact and only occasional contact with coworkers and supervisors, but he can respond to the usual work pressures and changes in the work setting described above as simple, routine work.

R. 70. In reaching this conclusion, the ALJ gave "appropriate weight," *id.* at 72, to the Global Assessment of Functioning ("GAF")[1] scores assessed by Dr. Patel and to Dr. Patel's opinions regarding Fitzpatrick's ability to work, as set forth in an October 15, 2013 "Psychiatric/Psychological Impairment Questionnaire" ("PIQ"). The ALJ explained:

> Dr. Patel's records appear to have inconsistent reporting regarding [Fitzpatrick's] status. Moreover, [Fitzpatrick's] reported activities of daily living (including: caring for his

---

[1]"GAF is a standard measurement of an individual's overall functioning level 'with respect only to psychological, social, and occupational functioning.'" *Boyd v. Apfel*, 239 F.3d 698, 700 n.2 (5th Cir. 2001) (quoting American Psychiatric Ass'n Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 1994)).

- 6 -

> mother, caring for his dogs, mowing the lawn, operating a motor
> vehicle and working on cars—both his, and for other people) are
> inconsistent with Dr. Patel's opinions and assessed GAF scores.

*Id.*

Fitzpatrick maintains that the ALJ erred by vaguely concluding that the opinions of

treating psychiatrist Dr. Patel were entitled to "appropriate weight."  He contends that the

ALJ's conclusory finding that Dr. Patel's opinions conflict with the treatment notes is not

supported by the record; that the ALJ failed to cite to any medical or legal authority that Dr.

Patel's findings in his treatment notes are incapable of causing the limitations that Dr. Patel

described in the PIQ; that Fitzpatrick's ability to engage in sporadic activities of daily living

are not inconsistent with a finding of disability; that because Dr. Patel's opinions are based

on appropriate medical findings and are uncontradicted by other substantial evidence in the

record, his assessment of Fitzpatrick's mental limitations, as set forth in the PIQ, should be

given controlling weight; and that even if the ALJ was not required to give Dr. Patel's

opinions controlling weight, she was nonetheless required to weigh his opinions using the

factors set forth in 20 C.F.R. § 416.927, each one of which weighs in favor of crediting Dr.

Patel's opinions.

The Commissioner responds that the court should accept as true the ALJ's statement

that she formulated Fitzpatrick's RFC after careful consideration of the entire record,

including proper consideration of opinion evidence.  The Commissioner contends that the

holding in *Newton v. Apfel*, 209 F.3d 448 (5th Cir. 2000), is limited to circumstances in

which the ALJ summarily rejects the opinion of a claimant's treating physician, based on the

testimony of a non-specialty medical expert who has not examined the claimant, and where the record does not contain competing first-hand medical evidence that supports the ALJ's decision, and she argues that those circumstances are not present in this case. The Commissioner also posits that the evidence as a whole does not support Dr. Patel's opinion because, *inter alia*, Fitzpatrick's GAF score had increased by March 2013, and Dr. Patel's lower assigned GAF score was inconsistent with this evidence; Fitzpatrick's ability to care for his mother, care for his dogs, mow the yard, operate a motor vehicle, and repair cars was inconsistent with Dr. Patel's opinion and low GAF score; checklist opinions, such as Dr. Patel's, are unworthy of credence when they are not adequately supported by, or are inconsistent with, the medical records; and Dr. Patel failed to provide a narrative or conclusion that explained the significance of the elements discussed in his assessment in terms of Fitzpatrick's ability to meet the mental demands of work. The Commissioner maintains that most of the ALJ's mental RFC findings are consistent with Dr. Patel's opinions in the PIQ; that Dr. Patel's opinion that Fitzpatrick was markedly limited in his ability to respond appropriately to changes in the work setting could be disregarded because Fitzpatrick testified that he had worked as a mechanic and had worked occasionally for gas money; and that in formulating the RFC, the ALJ inherently found that Fitzpatrick can maintain work on a regular and continuing basis despite Dr. Patel's opinion that Fitzpatrick would miss work more than three times each month.

Fitzpatrick argues in his reply that the Commissioner failed to identify any "first-hand competing evidence" that would have excused the ALJ from considering the factors in 20

C.F.R. § 416.927(c)(2)-(6), P. Reply 1; that the ALJ did not discount Dr. Patel's opinions on the basis that they were detailed in a questionnaire form, so this reasoning cannot be relied on to affirm the Commissioner's final decision; and that the ALJ did not state that she gave any weight to Dr. Patel's opinions, and, in any event, the ALJ's finding that Fitzpatrick has no limitations in his ability to understand, remember, and carry out all short and simple work is inconsistent with Dr. Patel's opinion that Fitzpatrick would have a moderate limitation (defined as significantly limited) in these areas of work-related mental functioning.

B

Before considering Fitzpatrick's arguments, the court must determine what weight the ALJ actually gave Dr. Patel's medical opinions.

The ALJ stated in her decision that she was giving "*appropriate* weight" to the opinions of Dr. Patel.  R. 72 (emphasis added).  In formulating Fitzpatrick's mental RFC, however, the ALJ significantly departed from the mental limitations that Dr. Patel noted in the PIQ.  For example, in the PIQ, Dr. Patel opined that Fitzpatrick was "moderately limited"—defined as "significantly affects but does not totally preclude the individual's ability to perform the activity," *id.* at 813—in his ability to understand and remember one- or two-step instructions, carry out simple one- or two-step instructions, and make simple work-related decisions.  In contrast, the ALJ found that Fitzpatrick has the mental RFC to understand, remember, and carry out short, simple, routine instructions in a simple work environment, and make judgments on simple routine work instructions.  This assessment does not note Fitzpatrick's "moderate" limitations in any of these areas, but instead suggests

- 9 -

that Fitzpatrick would have no difficulty understanding, remembering, and carrying out all short and simple work.  Similarly, the ALJ found that Fitzpatrick has the RFC to respond to the usual work pressures and changes in the work setting.  But Dr. Patel observed that Fitzpatrick was "markedly limited"—defined as "effectively precludes the individual from performing the activity in a meaningful manner," *id.*—in his ability to respond appropriately to changes in the work setting and in all but one of the categories relating to sustained concentration and persistence.  The ALJ's mental RFC determination fails to note a moderate, much less marked, limitation in Fitzpatrick's ability to respond to the usual work pressures and changes in the work setting.

Although the ALJ appears to have given controlling weight to Dr. Patel's assessment of Fitzpatrick's abilities and limitations in the category of social interaction,[2] she clearly departed from his opinions in other areas.  Accordingly, the court now turns to Fitzpatrick's arguments that the ALJ erred in failing to give Dr. Patel's opinions controlling weight and in formulating Fitzpatrick's mental RFC.

---

[2]The ALJ's RFC finding that Fitzpatrick should have only incidental public contact and occasional contact with coworkers and supervisors appears to be consistent with Dr. Patel's assessment of Fitzpatrick's abilities and limitations in the category of social interactions.  By limiting public contact to "incidental," and contact with coworkers and supervisors to "occasional," the ALJ appears to have taken into account Dr. Patel's opinion that Fitzpatrick is moderately limited in his ability to interact appropriately with the general public and markedly limited in his ability to accept instructions and respond appropriately to criticism from supervisors and in his ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes.

- 10 -

C

Generally, controlling weight is assigned to a treating physician's opinions that are well-supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with other substantial evidence in the record. *Newton*, 209 F.3d at 455; *see also* 20 C.F.R. § 404.1527(c)(2) ("If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight."). "The ALJ may give little or no weight to a treating source's opinion, however, if good cause is shown." *Ranes v. Astrue*, 2009 WL 2486037, at *9 (N.D. Tex. Aug. 14, 2009) (Fitzwater, C.J.) (citing *Newton*, 209 F.3d at 455-56). "Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Newton*, 209 F.3d at 456 (citations omitted).

As a procedural matter, "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527[(c)]." *Id.* at 453. Under 20 C.F.R. §§ 404.1527 and 416.927, the ALJ must evaluate the following factors before giving less than controlling weight to a treating source's opinions: (1) whether there was an examining relationship; (2) the treatment relationship, including the length, nature,

and extent of the treatment relationship, as well as the frequency of the examination(s); (3) the support of the source's opinion afforded by the medical evidence of record; (4) the consistency of the opinion with the record as a whole; (5) the specialization of the source; and (6) other factors that "tend to support or contradict the opinion."   20 C.F.R. § 404.1527(c); *see also Zapata v. Colvin*, 2014 WL 4354243, at *8 (N.D. Tex. Aug. 13, 2014) (Cureton, J.) (setting forth six-factor test), *rec. adopted*, 2014 WL 4354243 (N.D. Tex. Sept. 2, 2014) (Means, J.).

## D

Fitzpatrick argues, *inter alia*, that the ALJ erred in failing to specifically consider the factors provided in 20 C.F.R. § 416.927 in determining the weight to be given to Dr. Patel's opinions, as required in *Newton*.   "In considering whether the ALJ conducted a sufficient six-factor analysis, the court initially observes that an ALJ is not required to recite or discuss each factor in a sequential or formulaic fashion."   *Ranes*, 2009 WL 2486037, at *11 (citing *Wiltz v. Comm'r of Soc. Sec. Admin.*, 412 F.Supp.2d 601, 608 (E.D. Tex. 2005) ("[T]he adjudicator [need only] 'consider' the factors.   Neither the regulation nor interpretive case law requires that an ALJ specifically name, enumerate, and discuss each factor in outline or other rigid, mechanical form.")).   Evaluating the entirety of the ALJ's analysis, and focusing on its substance rather than its form, the court concludes that the ALJ engaged in a sufficiently detailed analysis that encompassed the six factors, and that the ALJ had good cause to discount Dr. Patel's opinions.

It is clear that the ALJ was aware of her obligations when analyzing the opinions of

a treating physician because she stated that she "considered opinion evidence in accordance with the requirements of 20 CFR 416.927." R. 70. Under factor one, the ALJ acknowledged that Dr. Patel was an intake physician and that he completed an "evaluation" on January 22, 2013. *Id.* at 72. Factor two considers the treatment relationship, including the length, nature, and extent of the treatment relationship, as well as the frequency of the examinations. Regarding this factor, the ALJ noted that the medical records indicated "limited treatment" subsequent to December 21, 2012, consisting of a visit on March 19, 2013 and the completion of the PIQ on October 15, 2013. *Id.* Factor five considers the specialization of the source. Although the ALJ did not specifically note Dr. Patel's specialty, it is clear that she understood that he was treating Fitzpatrick for psychological issues.

As to factors three, four, and six—under which the ALJ evaluates the supportability and consistency of the physician's opinion as well as any other factors that "tend to support or contradict the opinion"—the ALJ explained that she was giving Dr. Patel's opinion "appropriate weight" because (1) Dr. Patel's records appear to have inconsistent reporting regarding Fitzpatrick's status, and (2) Fitzpatrick's reported activities of daily living are inconsistent with Dr. Patel's opinions and assessed GAF scores. The ALJ's findings and conclusions in this regard are supported by the record.

In the PIQ, Dr. Patel opined that Fitzpatrick was "markedly limited" or "moderately limited" in nearly all areas, including understanding and memory, sustained concentration

and persistence, social interactions, and adaptation.[3]   Additionally, on three different

occasions between January 22, 2013 and March 19, 2013, Dr. Patel assigned Fitzpatrick GAF

scores ranging from 25 to 45.[4]  The ALJ noted in her opinion that a GAF of 21-30 indicates

behavior that is considerably influenced by delusions or hallucinations or serious impairment

in communication or judgment; a GAF score of 31 to 40 indicates some impairment in reality

testing or communication or major impairment in several areas, such as work or school,

family relations, judgment, thinking, or mood; and a GAF score of 41 to 50 indicates "serious

symptoms" or any serious impairment in social, occupational, or school functioning.  Dr.

Patel's treatment notes, however, do not indicate symptoms that would be consistent with a

---

[3]Dr. Patel opined that Fitzpatrick was "markedly limited" in the following capacities: the ability to remember locations and work-like procedures; the ability to understand and remember detailed instructions; the ability to carry out detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance; the ability to sustain ordinary routine without supervision; the ability to work in coordination with or proximity to others without being distracted by them; the ability to complete a normal workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; the ability to accept instructions and respond appropriately to criticism from supervisors; the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; the ability to respond appropriately to changes in the work setting; and the ability to set realistic goals or make plans independently.  He opined that Fitzpatrick was "moderately limited" in the following capacities: the ability to understand and remember one- or two-step instructions; the ability to carry out simple one- or two-step instructions; the ability to make simple work-related decisions; the ability to interact appropriately with the general public; the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; and the ability to travel to unfamiliar places or use public transportation.

[4]Dr. Patel assigned Fitzpatrick a GAF score of 25 on January 22, 2013; a GAF score of 45 on March 19, 2013; and a GAF score of 40 on October 15, 2013.

GAF score in the range of 25 to 45.  Rather, intake notes from January 22, 2013 and March 19, 2013 indicate only "moderate" symptoms without delusions, hallucinations, or serious impairment in communication or judgment.  Moreover, Fitzpatrick's testimony at the hearing before the ALJ that he cared for his mother, cared for his dogs, mowed the lawn, operated a motor vehicle, worked on his car, and worked on other peoples' cars indicates that Fitzpatrick's mental capacity is not limited to the extent Dr. Patel opined in the PIQ or in the GAF scores he assessed.

As the court has already explained, an ALJ for good cause can reject the opinions of a treating physician.  In this case, the ALJ explained that she was affording Dr. Patel's opinions "appropriate weight" because Dr. Patel's records appear to have inconsistent reporting regarding Fitzpatrick's status, and his reported activities of daily living are inconsistent with Dr. Patel's opinions and assessed GAF scores.  The ALJ properly considered the factors listed in 20 C.F.R. § 416.927(c), and factors two, three, four, and six provided good cause for the ALJ to discount Dr. Patel's opinions regarding Fitzpatrick's mental limitations.

### E

The court now turns to Fitzpatrick's contention that the ALJ failed to properly determine his RFC.

### 1

Fitzpatrick posits that rather than giving weight to the opinions of Dr. Patel, the ALJ "simply conjured a mental RFC out of thin air," P. Br. 11, and her failure to cite any evidence

in the record supporting such limitations requires remand.  He also contends that because the

ALJ's RFC finding in this case did not include a narrative of any specific medical or non-

medical facts that support the mental RFC determination for Fitzpatrick, this provides an

additional reason for remanding the claim for further proceedings.

The Commissioner does not specifically respond to these arguments, other than by

arguing that the ALJ's RFC determination is largely consistent with Dr. Patel's opinions as

set forth in the PIQ.

2

The ALJ found that Fitzpatrick has the mental RFC to

> understand, remember and carry out short, simple routine
> instructions in a simple work environment; and make judgment
> on simple routine work instructions.  He must have only
> incidental public contact and only occasional contact with
> coworkers and supervisors, but he can respond to the usual work
> pressures and changes in the work setting described above as
> simple, routine work.

R. 70.  As the court has already explained, in formulating Fitzpatrick's mental RFC, the ALJ

departed significantly from Dr. Patel's opinions regarding Fitzpatrick's mental abilities and

limitations.  She also afforded limited weight to the opinions of two state agency medical

consultants ("SAMCs")[5] who determined that Fitzpatrick's affective disorders were

nonsevere, causing only mild restriction in activities of daily living, mild difficulties in

---

[5]The first SAMC performed a psychiatric review of Fitzpatrick on February 27, 2013.
On reconsideration on April 26, 2013, a second SAMC concurred in the first SAMC's
opinions.

maintaining social functioning, mild difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation.[6]

The ALJ erred in making the RFC determination after rejecting the only medical opinions in the record that addressed the effect of Fitzpatrick's mental impairments on his ability to work. *Thornhill v. Colvin*, 2015 WL 232844, at *10 (N.D. Tex. Dec. 15, 2014) (Horan, J.), *rec. adopted*, 2015 WL 232844 (N.D. Tex. Jan. 16, 2015) (Lynn, J.). "While the ALJ may choose to reject medical sources' opinions, [she] cannot then independently decide the effects of Plaintiff's mental impairments on [his] ability to perform work-related activities, as that is prohibited by *Ripley*." *Id.* (citing *Ripley*, 67 F.3d at 557-58).[7]  Instead,

---

[6]In rejecting these opinions, the ALJ explained:

> Despite the limited record of mental health treatment since the filing of this instant application, which include varying GAF scores; inconsistent reports from the claimant regarding his mental status; and activities of daily living which include working on cars, attending to the needs of his mother prior to her admittance to rehab, caring for the home, and caring for a number of dogs; the undersigned finds the claimant more limited than opined by the State agency medical consultants and therefore gives the opinions of the consultants limited weight.

R. 73.

[7]In *Ripley* the Fifth Circuit explained:

> [the] ALJ is responsible for determining an applicant's residual functional capacity.  After considering the evidence, however, we conclude that the ALJ's determination . . . was not supported by substantial evidence.  The record includes a vast amount of medical evidence establishing that Ripley has a problem with his back.  What the record does not clearly establish is the effect

the ALJ must at that point obtain an expert medical opinion regarding the types of work tasks that the claimant can perform given his impairments. *Id.* (citing *Ripley*, 67 F.3d at 557).

In this case, the ALJ appears to have attempted to compensate for Fitzpatrick's affective disorder when she limited him to a simple work environment, simple routine work instructions, incidental public contact, and occasional contact with coworkers and supervisors. But other than the opinions of the two SAMCs (which the ALJ rejected), the record lacks medical evidence that would support a determination that Fitzpatrick can perform such work despite his mental impairments. *See Ripley*, 67 F.3d at 557-58. Accordingly, the court is not able to agree that the evidence substantially supports the ALJ's conclusion that Fitzpatrick was not disabled, because there is no medical opinion supporting the ALJ's finding that Fitzpatrick has the RFC to understand, remember, and carry out short, simple routine instructions in a simple work environment, make judgment on simple routine work instructions, work in an environment with incidental public contact and occasional contact with coworkers and supervisors, and respond to the usual work pressures and changes

---

Ripley's condition had on his ability to work . . . The Commissioner argues that the medical evidence substantially supports the ALJ's conclusion. In making this argument, the Commissioner points to reports discussing the extent of Ripley's injuries. Without reports from qualified medical experts, however, we cannot agree that the evidence substantially supports the conclusion that Ripley was not disabled because we are unable to determine the effects of Ripley's conditions . . . on his ability to perform sedentary work.

*Ripley*, 67 F.3d at 557-58 & n.27.

in the work setting.  Rather, the ALJ improperly made an independent RFC finding after declining to rely on any of the medical opinions addressing the effects of Fitzpatrick's mental impairments on his ability to work.  *See Thornhill*, 2015 WL 232844, at *10; *see also Williams v. Astrue*, 355 Fed. Appx. 828, 832 n.6 (5th Cir. 2009) (per curiam) ("In *Ripley*, we held that an ALJ may not—without opinions from medical experts—derive the applicant's [RFC] based solely on the evidence of [the applicant's] claimed medical conditions.  Thus, an ALJ may not rely on his own unsupported opinion as to the limitations presented by the applicant's medical conditions." (citing *Ripley*, 67 F.3d at 557)).  Because the ALJ erred by making an RFC determination without medical evidence addressing the effects of Fitzpatrick's impairments on his ability to work, the Commissioner's decision is not supported by substantial evidence.

3

The existence of this error does not automatically result in reversal of the Commissioner's decision.  "Procedural perfection in administrative proceedings is not required," and a court "will not vacate a judgment unless the substantial rights of a party have been affected."  *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (per curiam).  When an ALJ commits a *Ripley* error, remand "is appropriate only if [plaintiff] shows that he was prejudiced."  *Ripley*, 67 F.3d at 557.  "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision."  *Id*. at n.22.

In this case, the evidence before the ALJ showed that Fitzpatrick suffered an affective

disorder that, at least in some respects, affected his ability to work.  Given this evidence, the ALJ could have reached a different disability determination had she fully developed the record and obtained an expert medical opinion regarding the effects that Fitzpatrick's mental condition had on his ability to work.  Accordingly, the ALJ's failure to obtain medical opinion evidence regarding the effects of Fitzpatrick's mental impairment prejudiced him and warrants vacating and remanding the Commissioner's decision.  *See Thornhill*, 2015 WL 232844, at *11; *see also Johns v. Colvin*, 2015 WL 1428535, at *20 (N.D. Tex. Mar. 30, 2015) (Ramirez, J.).

Although remand is warranted on this ground alone, the court will turn to Fitzpatrick's remaining grounds for purposes of guiding the proceedings on remand.

IV

Fitzpatrick contends that the ALJ failed to properly evaluate his credibility when she found that his statements concerning the intensity, persistence, and limiting effects of his symptoms "are not entirely credible."  R. 74.

A

In determining Fitzpatrick's RFC, the ALJ found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible[.]"  *Id.*  According to the ALJ, Fitzpatrick's allegations regarding his limitations are

significantly inconsistent with the record. First, the objective

- 20 -

evidence of record weighs heavily against [Fitzpatrick's] allegations in this case[.] . . . When considering the State agency reports, as well as [Fitzpatrick's] daily activities of caring for his mother (until she entered rehab), mowing the lawn, cooking, driving, shopping, . . . working on cars and playing video games[,] the undersigned finds the claimant is capable of work as set forth in more detail in the remaining [RFC], particularly noting the absence of any significant longitudinal treatment history to the contrary. Further, the remaining [RFC] addresses demands which might exacerbate [Fitzpatrick's] symptomatology, as well as having considered the location, duration, frequency, and intensity of the symptomatology. In addition, the record fails to indicate any significant side effects from medications. Finally, the undersigned carefully observed the claimant and notes that the claimant was not in any obvious pain or discomfort when walking in or out of the hearing room or while sitting during the course of the hearing.

*Id.* Fitzpatrick challenges the ALJ's credibility finding, arguing that it is nothing more than a repetition of the reasoning used to discount Dr. Patel's opinions; that his limited activities of daily living are not comparable to the mental demands of full-time work 8 hours a day, 40 hours a week; that the ALJ failed to cite to any medical or legal authority to support her lay conclusion that the mental status abnormalities documented throughout the treatment records cannot cause the limitations alleged by Fitzpatrick and detailed by Dr. Patel; and that the ALJ's heavy reliance on her own interpretation of the clinical and diagnostic findings here was inappropriate.

The Commissioner responds that the ALJ based her RFC determination on the credible evidence of record, which shows that, despite his allegations of disability, Fitzpatrick retained the capacity to perform a modified range of light work. The Commissioner contends that the evidence did not support Fitzpatrick's allegations that his

mental impairments imposed greater limitations than encompassed in the ALJ's RFC finding, and that the ALJ may discount a claimant's subjective complaints if inconsistencies exist, as here, between the alleged impairments and the evidence as a whole.

B

Fitzpatrick does not does not dispute that the ALJ followed the correct two-step process in making the credibility determination. That process, outlined in Social Security Ruling 96-7p, provides, in pertinent part:

> [t]he determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

*Morton v. Astrue*, 2011 WL 2455566, at *9 (N.D. Tex. June 20, 2011) (Fitzwater, C.J.) (citation omitted); *see also Salgado v. Astrue*, 271 Fed. Appx. 456, 458-59 (5th Cir. 2008) (per curiam). In general, an ALJ's findings regarding the credibility of subjective symptom testimony are entitled to considerable judicial deference. *See Beck v. Barnhart*, 205 Fed. Appx. 207, 213 (5th Cir. 2006) (per curiam); *James v. Bowen*, 793 F.2d 702, 706 (5th Cir. 1986); *Patton*, 697 F.2d at 592. "Substantial evidence simply needs to be more than a mere scintilla. Not only is it less than a preponderance, the evidence can preponderate in the claimant's favor and the ALJ's decision [can] still be supported by substantial evidence." *Morton*, 2011 WL 2455566, at *10.

In this case, the ALJ reached the conclusion that Fitzpatrick challenges after

discussing the evidence in the record and explaining how she evaluated the evidence in making her RFC assessment.  In connection with her mental RFC finding,[8] the ALJ considered objective medical records, including treatment records from Dr. Patel, Fitzpatrick's own testimony about his symptoms and daily activities, and the absence of any significant treatment history for Fitzpatrick's allegedly disabling conditions.[9]  The ALJ acknowledged that Fitzpatrick's medically determinable impairments could reasonably be expected to cause his alleged symptoms, but she concluded that his statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely credible because his allegations regarding his limitations were significantly inconsistent with the record.  This is not a case where the ALJ selectively discussed only the evidence that supported her ultimate conclusion.  *See Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000)

---

[8]The ALJ relied on the conclusions reached in two State agency reports with regard to Fitzpatrick's alleged physical disabilities, but because Fitzpatrick does not challenge the ALJ's credibility determination or RFC assessment with respect to his alleged physical disabilities, the court does not discuss this evidence here.

[9]The ALJ explained:

> When a claimant alleges a condition severe enough to be disabling, there is a reasonable expectation that the claimant will seek examination and treatment.  The failure of the claimant to seek examination and consistent treatment for his reported conditions reflects poorly on the credibility of the claimant and the assertions that the conditions are disabling.  If the claimant was having the level of functional complaints as alleged in the hearing, one would expect consistent treatment for his reportedly ongoing conditions.

R. 73-74.

("[T]he ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position.").  The ALJ found that Fitzpatrick's testimony regarding the severity of his symptoms was not credible because the objective medical evidence weighed against his allegations; his level of daily activity—including caring for his mother, mowing the lawn, cooking, driving, shopping, working on cars, and playing video games—suggested that he is capable of work as set forth in the RFC; and there was an absence of any significant treatment history, which one would expect given the level of functional complaints he alleged.

The ALJ did not err in assessing Fitzpatrick's credibility.

V

Finally, Fitzpatrick posits that the ALJ relied on flawed VE testimony because the hypothetical she posed to the VE failed to accurately describe Fitzpatrick's moderate restrictions in concentration, persistence, or pace.

A

> Unless the hypothetical question posed to the [VE] by the ALJ can be said to incorporate reasonably all disabilities of the claimant recognized by the ALJ, and the claimant or his representative is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the [VE] any purported defects in the hypothetical questions . . . a determination of non-disability based on such a defective question cannot stand.

*Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir. 2001) (quoting *Bowling*, 36 F.3d at 436).  The ALJ posed a hypothetical to the VE that did not explicitly refer to Fitzpatrick's moderate

restrictions in concentration, persistence, or pace.  Instead, the ALJ asked the VE whether jobs existed for a hypothetical individual who, *inter alia*, was

> able to understand, remember, and carry out short, simple, routine instructions in a simple work environment[; was able to] make judgment on simple, routine work instructions; [and w]ould have only incidental public contact and only occasional contact with coworkers and supervisors[; b]ut can respond to usual work pressure and changes in the work setting as described above as simple, routine work.

R. 133.  In response, the VE opined that such a person could work as a "small product assembler," "routing clerk," and "small item inspector."  *Id.*

Fitzpatrick maintains that the ALJ's decision is fatally flawed because it is based on the VE's response to a defective hypothetical that did not incorporate as limitations the moderate restrictions found in Fitzpatrick's concentration, persistence, or pace.[10]  He contends that although the Fifth Circuit has not addressed this issue, multiple circuits and this court have found reversible error when the ALJ's hypothetical to the VE does not specifically incorporate limitations found under the four broad functional areas considered under 20 C.F.R. § 416.920a, which includes limitations in concentration, persistence, or pace.

The Commissioner responds that the ALJ is not required to include every mental limitation found at step two of the sequential evaluation in her RFC assessment or the hypothetical at step five, and she argues that substantial evidence supports the ALJ's

---

[10]Fitzpatrick acknowledges that the limitations to only incidental public contact and occasional contact with coworkers and supervisors "could ostensibly account for the moderate restriction in social functioning."  P. Br. 15.

determination, based on VE testimony, that Fitzpatrick retained the RFC to perform jobs that exist in significant numbers in the national economy.

## B

Fitzpatrick has failed to demonstrate reversible error. The ALJ was only obligated to reasonably incorporate in her hypothetical all of Fitzpatrick's disabilities that the ALJ recognized. *See Boyd*, 239 F.3d at 707. In her RFC determination, the ALJ found, *inter alia*, that Fitzpatrick can

> understand, remember and carry out short, simple routine instructions in a simple work environment; and make judgment on simple routine work instructions. He must have only incidental public contact and only occasional contact with coworkers and supervisors, but he can respond to the usual work pressures and changes in the work setting described above as simple, routine work.

R. 70. If the ALJ considered the moderate restrictions in Fitzpatrick's concentration, persistence, or pace when determining the RFC, and this RFC finding is supported by substantial evidence, it was not necessary for the ALJ to directly include in her hypothetical a limitation on concentration, persistence, or pace. *Herring v. Astrue*, 788 F.Supp.2d 513, 518 (N.D. Tex. 2011) (Fitzwater, C.J.); *see also Bordelon v. Astrue*, 281 Fed Appx. 418, 423 (5th Cir. 2008) (per curiam) (holding that where ALJ's hypothetical to VE assumed individual who, *inter alia*, would need a job with only rare public interaction, low stress, and simple one- to two-step instructions, "ALJ reasonably incorporated [complainant's] moderate concentration, persistence, and pace limitations such that the hypothetical question was proper."); *Smith v. Colvin*, 2014 WL 1407437, at *5 (N.D. Tex. Mar. 24, 2014) (Horan, J.)

("The record reflects that the ALJ considered the limitations in concentration, persistence, or pace when determining Plaintiff's RFC and that this RFC finding is supported by substantial evidence.  The ALJ was not required to expressly include a limitation for concentration, persistence, or pace in her hypothetical to the VE."), *rec. adopted*, 2014 WL 1407440 (N.D. Tex. Apr. 11, 2014) (Godbey, J.) .

In evaluating Fitzpatrick's mental impairments, the ALJ considered whether the "paragraph B" criteria of 20 C.F.R. § 416.920a had been satisfied.[11]  With regard to

---

[11]In addition to the severity standard that is used to evaluate all impairments, the ALJ must follow an even more precise standard when evaluating the severity of a claimant's mental impairments. *See* 20 C.F.R. § 416.920a.  This evaluation process is often referred to as the "special technique" or the "technique." *See, e.g., Randall v. Astrue*, 570 F.3d 651, 658 (5th Cir. 2009) (per curiam) (citing 20 C.F.R. § 404.1520a).  The special technique requires that the ALJ first consider whether a claimant has a medically determinable mental impairment. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00; 20 C.F.R. § 416.920a(b)(1).  Once the ALJ finds that a claimant has a mental impairment, she must rate the degree of functional limitation resulting from the impairment pursuant to the categories identified in paragraphs A, B, and sometimes C, of the adult mental disorders listings. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00; 20 C.F.R. § 416.920a(b)(2), (c).  Paragraph B contains four broad functional areas: activities of daily living; social functioning; concentration, persistence, and pace; and episodes of decompensation.  20 C.F.R. § 416.920a(b)(2), (c)(3); 20 C.F.R. Pt. 404, Subpt. P. App. 1, § 12.00C.  The first three functional areas are rated on a five-point scale: none, mild, moderate, marked, and extreme.  20 C.F.R. § 416.920a(c)(4).  The fourth functional area is rated on a four-point scale ranging from "none" to "four or more" episodes. *Id.*  After the ALJ rates the degree of functional limitation resulting from any mental impairment, the ALJ determines the severity of such impairment.  20 C.F.R. § 416.920a(d).  If the degree of limitation in each of the first three areas is "none" or "mild," and the degree of limitation in the fourth area is "none," "the ALJ must find the impairment 'not severe,' which generally concludes the analysis and terminates the proceedings." *Boyd*, 239 F.3d at 705 (citing to 20 C.F.R. § 404.1520a[(d)](1)).  If the mental impairment is "severe," the ALJ must then determine if the impairment meets or equals a listed mental disorder under 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. § 416.920a(d)(2).  If the impairment is severe, but does not reach the level of a listed disorder, then the ALJ must conduct an RFC assessment.  20 C.F.R. § 416.920a(d)(3).

concentration, persistence, or pace, she found that Fitzpatrick has "moderate" difficulties, noting that he "testified to significant difficulty in this domain," but "also reports that he enjoys working on old cars, watching television and playing video games." R. 69. The ALJ stated and acknowledged that limitations identified in the "paragraph B" criteria are not an RFC assessment but are used to rate the severity of mental impairments at steps two and three of the sequential evaluation process, and that the mental RFC assessment used at steps four and five requires a more detailed assessment of functions contained in the broad categories found in "paragraph B." The ALJ stated that the RFC "reflects the degree of limitation the [ALJ] has found in the 'paragraph B' mental function analysis." *Id.* at 70. The ALJ's decision shows that she considered the limitation of moderate difficulty with regard to concentration, persistence, and pace, and included it in Fitzpatrick's RFC, by limiting him to understanding, remembering, and carrying out "short, simple routine instructions in a simple work environment" and making judgment "on simple routine work instructions." *Id.* Stated differently, the ALJ found that *even with* a moderate restriction in the area of concentration, persistence, or pace, Fitzpatrick was not prevented from understanding, remembering, and carrying out short, simple, routine instructions in a simple work environment or making judgment on simple, routine work instructions. *See, e.g., Downing v. Astrue*, 2012 WL 4354928, at *5 (N.D. Tex. Sept. 7, 2012) (Averitte, J.) (ALJ incorporated "moderate difficulties in concentration, persistence or pace" by limiting claimant to "simple tasks" in RFC determination), *rec. adopted*, 2012 WL 4354915 (N.D. Tex. Sept. 24, 2012) (Robinson, J.); *Gonzalez v. Comm'r of Soc. Sec. Admin.*, 2012 WL 1058114, at *7 (N.D. Tex.

Jan. 26, 2012) (Stickney, J.) (holding that the ALJ considered the "paragraph B" limitation of moderate difficulty with regard to concentration, persistence, and pace, and included this functional limitation in the RFC assessment by limiting plaintiff to short and simple tasks and instructions), *rec. adopted*, 2012 WL 1065459 (N.D. Tex. Mar. 29, 2012) (O'Connor, J.).

The ALJ's hypothetical to the VE tracked each limitation that she found. *Compare* R. 133 (ALJ asking VE whether jobs existed for hypothetical individual with plaintiff's RFC, which included "be[ing] able to understand, remember, and carry out short, simple, routine instructions in a simple work environment[, and being able to] make judgment on simple, routine work instructions") *with id.* at 70 (Fitzpatrick's RFC, which stated that Fitzpatrick can "understand, remember and carry out short, simple routine instructions in a simple work environment; and make judgment on simple routine work instructions."). Therefore, the ALJ did not commit reversible error. In her assessment of the RFC, she sufficiently accounted for Fitzpatrick's moderate restrictions in concentration, persistence, or pace by recognizing his moderate restrictions in concentration, persistence, or pace in her analysis before ultimately determining that these limitations were sufficiently moderate for Fitzpatrick to be able to understand, remember, and carry out short, simple, routine instructions in a simple work environment and make judgment on simple routine work instructions.

And even if the ALJ erred in failing to include one or more limitations in the hypothetical she posed to the VE, this error would be harmless. An ALJ's failure to incorporate all of a claimant's recognized disabilities into a hypothetical question is not reversible error where the claimant's representative is afforded the opportunity to correct

deficiencies in the question by mentioning or suggesting to the VE any purported defects in the hypothetical question, "including additional disabilities not recognized by the [ALJ]'s findings and disabilities recognized but omitted from the question." *Wise v. Barnhart*, 101 Fed. Appx. 950, 951 (5th Cir. 2004) (per curiam) (quoting *Bowling*, 36 F.3d at 436); *see also, e.g., Gardner v. Massanari*, 264 F.3d 1140, 2001 WL 822457, at *2 (5th Cir. June 18, 2001) (per curiam) ("[Plaintiff] does not dispute that his non-attorney representative was allowed to cross-examine the VE regarding the ALJ's hypothetical question.  Thus, even assuming, *arguendo*, that the ALJ's hypothetical question was deficient in the respects urged on appeal, affording [the claimant's] representative an opportunity to correct any perceived deficiencies precludes a finding of reversible error.").  Fitzpatrick's attorney was afforded an opportunity at the hearing to cross-examine the VE and to correct deficiencies in the ALJ's hypothetical question by mentioning or suggesting to the expert any purported defects in the question. Accordingly, any deficiency in the ALJ's hypothetical to the VE was not reversible error. *See, e.g., Harrison v. Colvin*, 2014 WL 982843, at *5 (N.D. Tex. Mar. 12, 2014) (Fitzwater, C.J.) (holding that any error in failing to include recognized limitation in ALJ's hypothetical question to VE was not reversible error where plaintiff's attorney was afforded opportunity to correct deficiencies in hypothetical by mentioning or suggesting purported defects in the question); *Browning*, 2013 WL 6242087, at *6 (same).

*       *       *

The ALJ did not err in assessing Fitzpatrick's credibility or in relying on VE testimony based on a hypothetical that did not specifically include "moderate restrictions in

concentration, persistence, or pace."  In these respects, the Commissioner's decision is affirmed.  But the ALJ did commit reversible error in formulating an RFC determination without medical evidence addressing the effects of Fitzpatrick's mental impairments on his ability to work.  Because consideration of this evidence could change the outcome in this case, the court vacates the Commissioner's decision in part and remands this matter for further proceedings consistent with this memorandum opinion.

Accordingly, the Commissioner's decision is AFFIRMED in part and VACATED and REMANDED for further proceedings consistent with this memorandum opinion

March 31, 2016.


_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE

- 31 -